# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Jeffrey Michael Sweesy,                           Civ. No. 08-323 (PAM /JJK)

        Petitioner,

v.                                                     **REPORT AND**
                                                 **RECOMMENDATION**

Federal Bureau of Prisons,

        Respondent.

Jeffrey Michael Sweesy, 10777-073, 9595 W. Quincy Avenue, Littleton, CO 80123, *pro se.*

Jeffrey S. Paulsen, Assistant United States Attorney, counsel for Respondent.

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the undersigned United States Magistrate Judge on the Petition of Jeffrey Michael Sweesy for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1). The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. For the reasons discussed below, the Court recommends that Petitioner's Application for Habeas Corpus Relief be **DENIED**.

## I. INTRODUCTION

Petitioner is a federal inmate incarcerated at FCI Waseca. He is serving a 140-month sentence, with three years suspended release, imposed by the United States District Court for the District of South Dakota, following a conviction for attempted manufacture of methamphetamine. He has a projected release date

of April 13, 2010, pursuant to good conduct time release.  (Doc. No. 10, Decl. of Ann Norenberg ("Norenberg Decl.") ¶ 3.)

On April 26, 2007, Petitioner received an incident report for fighting with another prisoner at the FCI Tucson where he was then serving his sentence. The incident involved a dispute at a softball game in which Petitioner was serving as a referee.  Petitioner was observed by a staff member punching another inmate when a dispute arose over a referee call made by Petitioner.  A Disciplinary Hearing Officer ("DHO") decided that Petitioner committed the prohibited act of "Assaulting Any Person, Code 224" and sanctioned Petitioner with the disallowance of 27 days of good conduct time and 30 days of disciplinary segregation.  Petitioner exhausted his administrative remedies and the final decision of the DHO was upheld at both the Regional and Central Office levels of the BOP.  (Id. at ¶¶ 4-8, Attachs. B, C.)

In his Petition, Petitioner contests this loss of 27 days of good conduct time, claiming that his due process rights were violated.  He seeks restoration of the 27 days and expungement of the incident report because it affects his eligibility for camp placement at the end of his sentence.

## II.  STANDARD OF REVIEW

In order for relief to be granted under 28 U.S.C. § 2241, Petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  It is well-settled that "[a] necessary predicate for the granting of federal habeas relief [to a petitioner] is a

determination by the federal court that [his or her] custody violates the Constitution, laws, or treaties of the United States." *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (citing 28 U.S.C. § 2241).  Petitioner's constitutional claim is that he was not afforded due process as required by the Fifth Amendment.

Depriving Petitioner of 27 days good time credits as a discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause of the Fifth Amendment.  *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).  In reviewing due process in this context, it is important to keep in mind that internal prison disciplinary proceedings do not function in the same manner as criminal prosecutions and inmates are not afforded the full "panoply" of rights as criminal defendants.  *See Ponte v. Real*, 471 U.S. 491, 495 (1985). In *Wolff*, the Supreme Court held that where certain basic procedural elements of the discipline process exist, the Constitution's guarantee of procedural due process would be satisfied.  The five elements required for procedural due process with regard to a prison disciplinary hearing are:  (1) written notice of the charged misconduct at least 24 hours before the hearing; (2) an impartial hearing body; (3) an opportunity to present witnesses and documentary evidence; (4) assistance for illiterate inmates or in complex cases; and (5) a written statement of the evidence relied upon and reasons for the sanction.  418 U.S. at 564-70.

Even if procedural due process requirements are satisfied, we still must determine whether there was sufficient evidence to support the decision to

discipline Petitioner.  In *Superintendent, Massachusetts Correctional Institution v.*

*Hill*, 472 U.S. 445 (1985), the Supreme Court provided guidance regarding the

appropriate standard of review to apply in our assessment of prison disciplinary

decisions involving the loss of good time credits.  The requirements of due

process are met, and the decision of the prison discipline officer must be upheld,

if there is "*some evidence*" to support the decision.  *Hill*, 472 U.S. at 455, 457

(emphasis added).  In *Hill*, the court described the process to be used by the

reviewing court as follows:

> Ascertaining whether this standard is satisfied does not
> require examination of the entire record, independent
> assessment of the credibility of witness, or weighing of
> the evidence.  Instead, the relevant question is whether
> there is *any* evidence in the record that could support
> the conclusion reached by the disciplinary board.

*Id.* at 455-56 (emphasis added).  Once the reviewing court determines there is

"some evidence" to support the finding of the DHO, the court must reject the

evidentiary challenge by the petitioner and uphold the finding of the DHO.  *See*

*id.* at 457.  "The fundamental fairness guaranteed by the Due Process Clause

does not require courts to set aside decisions of prison administrators that have

some basis in fact."  *Id.* at 456.

### III.  DISCUSSION

#### A.    Due Process

The procedural due process requirements were clearly met in this case.

Written notice of the charges was provided to Petitioner when he received a copy

of the incident report on April 27, 2007.  He was also provided with Notice of

Disciplinary Hearing on May 1, 2007, which set forth an array of due process

rights including, for example, the right to call witnesses, to present documentary

evidence, and to have a fulltime member of the staff represent him before the

DHO.  (Norenberg Decl. at ¶ 4, Attach. B.)  Petitioner requested that staff

member Joseph Anderson represent him at the May 24, 2007 hearing.  Anderson

reviewed the evidence with Petitioner, interviewed two witnesses as requested

by Petitioner, provided statements of the witnesses to the DHO, and appeared

with Petitioner at the hearing.

After the hearing, Petitioner was provided with a written report of the

findings, sanctions, and the reasoning of the DHO.  He appealed the findings of

the DHO through the BOP's administrative remedy system.  As a result of the

appeal, the DHO was directed to reconsider some of the evidence provided by

the witnesses and address that evidence in the report.  The DHO amended the

report in accordance with this direction and a copy of the amended report was

provided to the Petitioner on July 17, 2007.  This final decision of the DHO was

then upheld on appeal by both the Regional and Central Office of the BOP.

The Petitioner's complaint about procedural due process is that in the

section of the DHO's first report where the DHO provided its explanation for its

decision, the DHO did not discuss the two witness statements obtained by

Petitioner.  Another section of the first report did set forth a summary of what was

contained in these two statements:  "[One inmate] stated that he observed

another inmate throw rocks at inmate Sweesy and he then charged Sweesy and Sweesy hit him.  [Another inmate] stated that he did not see anything." (Norenberg Decl. at Attach. B.)  As a result of Petitioner's appeal, the DHO amended the report and included an evaluation of these witnesses' statements in the section of the amended report in which he described the specific evidence he relied on to support the findings.  He said that he did consider the statements, including the statement of the first inmate described above, but that "[t]he other inmates action do not (sic) negate the fact that you struck the inmate first . . . [an inmate] made an aggressive move towards you, a common practice during a baseball game, you had the opportunity to turn away and move away from his aggression had you truly believed he intended to harm you." (*Id.*)  Thus, the DHO did in fact consider the witness statements proffered by Petitioner.  All of procedural requirements set forth by the Supreme Court in *Wolf* were met and thus there is no basis for habeas relief on procedural due process grounds.

### B.    Sufficiency of the Evidence

The primary focus of the habeas Petition is on the lack of merit in the DHO's decision.  The evidence upon which the DHO based his decision that Petitioner was guilty of "Assaulting Any Person (Less Than Serious Physical Injury)" included an eyewitness account of a staff member whose testimony was summarized by the DHO as follows:

> On 04-26-2007, while conducting routine rounds of the Camps softball field, I observed an inmate by the third base being punched by inmate Sweesy with a closed fist.  The other inmate did not fight

> back and appeared to be the victim of an assault.  As I intervened to
> assess the situation, I observed inmate Sweesy bleeding from his
> right hand.  The unidentified inmate had disbursed into a crowd of
> inmates who were walking towards the dorm.  I notified the
> Lieutenant who had staff respond and conduct visual searches of all
> inmate (sic) assigned to the Camp.  Upon completion of the check [a
> certain inmate] was identified with injuries indicative of being
> involved in a physical altercation.  Additionally inmate Sweesy stated
> that he had hit him because he kept criticizing him about the game
> he was referring (sic).  I observed that [the certain inmate] had a cut
> on his lower lip.  Both inmate (sic) were taken to medical for
> evaluation and placed in SHU.

(*Id.*)  The staff member who identified the inmate who was hit by Petitioner wrote

a report which stated the following:

> While escorting inmate [deleted] to the front of the camp he told me
> 'We're friends (referring to inmate Sweesy #10777-073) he was
> agitated from an earlier game and when I asked him if he was blind
> on a call that he made he hit me[.']

(*Id.*)

As noted above, once the Court determines that there is "some evidence"

to support the finding of the DHO, the Court must reject the evidentiary challenge

by the Petitioner and uphold the finding of the DHO.  *Hill*, 472 U.S. at 457.  Here,

there is sufficient evidence to meet this threshold.  Petitioner admitted that he hit

the other inmate after the argument ensued.  The other inmate had facial

lacerations from the altercation, and made a statement to the prison staff

member that Petitioner struck him after he said that the Petitioner was "blind on

the call."  Although the Petitioner alleges that the DHO did not take into account

that an eyewitness supported Petitioner's claim that he acted in self-defense after

the other inmate threw rocks and charged at him, this is simply not true.  The

DHO took the self-defense argument into account and addressed it in the Amended Report by noting that "the other inmate's action does not negate the fact that you struck the inmate first" and that "you had the opportunity to turn away and move away from his aggression had you truly believed he intended to harm you." (Norenberg Decl. at Attach. B.)  The Court cannot, during this review, reweigh this evidence.  The Court must limit its review to determining whether there is any evidence in the record to support the conclusion reached by the prison disciplinary authority.  *Hill*, 472 U.S. at 455-56.  Given Petitioner's admission that he did hit another inmate, the staff member's eyewitness account of the incident, the photographic evidence of lacerations on the face of the inmate who was hit, and the other inmate's statement that Petitioner struck him when he accused Petitioner of a bad referee call, there was certainly enough evidence to meet this low threshold.

Additionally, Petitioner alleges that the Amended Report contained new evidence that was not presented at the hearing.  Although the Amended Report does contain an expanded explanation of the evidence that the DHO relied upon, the evidence was not new evidence, but rather a more detailed description of the evidence presented at the hearing.  Specifically, the DHO added two paragraphs regarding the witnesses that Petitioner requested be interviewed, as well as two paragraphs regarding Petitioner's claims in self-defense.  None of this information was new, but rather was an elaboration of evidence that was presented by Petitioner himself.

Finally, Petitioner complains because the DHO said that Petitioner "continued to strike him cruelly while [the other inmate] made no attempt to defend himself." (*Id.*) Petitioner argues that the eyewitness account by the staff member makes no reference to any repeated beating or any cruelty. Although this may be true, it does not negate the fact that there is still enough evidence— under the very minimal "any evidence" standard that the Court must follow—to support the DHO's decision.

In conclusion, the record shows that the DHO considered all of the available evidence, and determined the greater weight of the evidence supported the charges against Petitioner. The evidence included the SIS investigation, injury assessment forms, witness statements, and Petitioner's own admission. Based on the evidence, the DHO concluded that Petitioner had committed the prohibited act and the DHO sanctioned him in accordance with policy. Despite Petitioner's assertions, there was sufficient evidence (that is, "some" evidence) to support the DHO's findings. Petitioner's constitutional rights were not violated.

## IV. RECOMMENDATION

Based on the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.   The Petition for Writ of Habeas Corpus be **DENIED**; and

2.   This action be **DISMISSED WITH PREJUDICE**.


Dated:  January 27, 2009

_s/ Jeffrey J. Keyes_     
JEFFREY J. KEYES
United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 10, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.